OPINION OF THE COURT
Per Curiam.
Judgment of conviction rendered September 25, 1998 affirmed.
The criminal contempt and harassment charges underlying this prosecution stem from events occurring during the stormy dissolution of the complainant’s marital relationship with the defendant. Evidence at trial was that in March and July of 1996 the complainant obtained two valid orders of protection, each prohibiting defendant, inter alia, from assaulting, harassing, intimidating or threatening her; that on May 7, 1996, defendant made a series of telephone calls to and later appeared unannounced at the complainant’s private, midtown office where he yelled and cursed at the complainant; and that on July 28, 1996, defendant became “enraged” at the complainant, repeatedly “pushed” her shoulders with both hands, and prevented her from calling the police when a dispute arose inside the complainant’s residential apartment during a scheduled custody visit.
*314 The defendant’s guilt was established beyond a reasonable doubt and was not against the weight of the evidence. The issues raised by defendant concerning the complainant’s credibility, including those raised by defendant’s own exculpatory version of events, were properly placed before the jury and we see no reason to disturb its determination (see, People v Gaimari, 176 NY 84, 94).
We find unavailing the defendant’s challenge to the trial court’s Molineux ruling allowing evidence that defendant yelled and cursed at the complainant in the couple’s marital home and made a series of unsolicited telephone calls to the complainant’s office on September 27, 1995. This evidence was properly admitted since it was probative of the issue of defendant’s intent, countered defense contentions, and provided necessary background to explain the relationship between the parties leading up to the issuance of the protective orders and the occurrence of the within incidents (see, People v Angel, 238 AD2d 210, lv denied 90 NY2d 1009; People v Bernard, 224 AD2d 192, lv denied 88 NY2d 964; People v Clemins, 158 AD2d 854, lv denied 76 NY2d 732). Indeed, defendant’s present challenge to the relevance of the September 27, 1995 incident is undermined by defense counsel’s own opening statement at trial, in which counsel emphasized to the jury that the “background” history of the couple’s marital discord was “essential in deciding whether you believe the complaining witness’ story.” Moreover, the trial court’s specific instructions to the jury explaining the limited purpose of the evidence relating to the uncharged incident assured that defendant would not suffer undue prejudice (see, People v Till, 87 NY2d 835).
Nor was the defendant denied a fair trial as a result of the complainant’s limited testimony concerning defendant’s “friends[hip]” with members of the Irish Republican Army (IRA). Pursuant to the court’s pretrial Ventimiglia ruling (People v Ventimiglia, 52 NY2d 350), the People were permitted to introduce evidence indicating that when the defendant called the complainant a “rat” during their July 28, 1996 encounter the term carried a “special” threatening meaning, based upon the defendant’s familiarity with the IRA and its retributive practices. The complainant was instructed not to testify about the defendant’s own putative membership in the IRA. Consistent with the court’s Ventimiglia rulings, the complainant’s trial testimony revealed only that defendant previously had told her that he had friends in the IRA and that those friends killed “rats” who were “disloyal” to the orga *315 nization. This testimony was admissible, in the particular circumstances of this case, to set a proper context for and explain what motivated the defendant’s invective (see, People v Boyd, 164 AD2d 800, 803, lv denied 77 NY2d 904 [evidence of defendant’s gang memberships admissible in murder trial to establish, inter alia, that defendant, in stating “Bust him,” was directing that victim be killed]). The fact that the word “rat” is generally associated with several standard meanings does not negate the People’s demonstrated showing that the word has a “special” threatening meaning in the argot of the IRA and that, in the context of its utterance here, the word was intended to and did in fact convey a threatening message. As Mr. Justice Holmes so eloquently stated: “A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.” (Towne v Eisner, 245 US 418, 425, quoted in People v Neumann, 51 NY2d 658, 666-667, cert denied 452 US 918.) True to this teaching, the court’s balanced Ventimiglia ruling appropriately allowed evidence shedding light on the defendant’s intended usage of the word “rat,” while at the same time excluding any direct evidence of the defendant’s purported IRA membership.
It need also be emphasized that insofar as the criminal contempt charge relating to the July 28, 1996 incident was bottomed on a verbal exchange between the disputants, it was not enough for the People to show that defendant spoke to the complainant in a demeaning or discourteous manner; rather it was the People’s burden to establish beyond a reasonable doubt that defendant intentionally disobeyed the extant protective order through verbal threats or intimidation. The complainant’s brief IRA reference, and the prosecutor’s isolated summation comment thereon — which together spanned no more than 2 full pages of the 691-page record developed during the five-day jury trial — were closely related to these required elements of the People’s case (see, People v Heine, 238 AD2d 212, lv denied 90 NY2d 905). The IRA evidence did not directly ascribe any wrongdoing to defendant, and was too vague and equivocal to be assigned the inflammatory meaning given to it by defendant. To the extent that defendant now argues that the court should have given a limiting instruction in connection with this aspect of the complainant’s testimony, his contention is unpreserved in view of counsel’s failure to request any such instruction (see, People v Thomas, 244 AD2d 271, lv denied 91 NY2d 898).
*316 The defendant’s remaining points, to the extent preserved for appellate review, are lacking in merit.